UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL POLLOCK,

                              Plaintiff,

        v.                                              3:07-cv0637

DAVID P. DANIELS, JAMIE BELL, SHEILA
V. HAGAN, TERRY SEIDLER, GARY HACKETT,
C. TED ELLINGSEN, CHENANGO COUNTY
SHERIFF'S DEPARTMENT, and THE NEW YORK
STATE POLICE,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff commenced the instant action asserting various causes of action against

Defendants arising out of the repossession of his tractor and Jeep and arising out of his

arrests.  Presently before the Court are motions by Defendants Bell, Chenango County, and

Ellingsen for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the

Amended Complaint in its entirety.

## I.      FACTS

        Prior to May 2004, Plaintiff Michael Pollock was in a relationship with Sheila Hagan.

During that time, Plaintiff was in the logging business.  Hagan loaned Plaintiff $700

purportedly to complete repairs on a tractor used for the logging business.  As collateral for

the loan, Plaintiff signed over to Hagan title to his 1997 Jeep.  Plaintiff took the signed title

and placed it in a file box kept in Hagan's home.  The relationship between Plaintiff and Hagan ended in May 2004.

As is pertinent hereto, Plaintiff received two other loans in 2003.  Terry Seidler loaned Plaintiff $10,000 as a prepayment to Nola Daniels to secure a logging contract with her.  Seidler's boyfriend, Gary Hackett, was in the logging business with Plaintiff.  Seidler also loaned Plaintiff $4,000 for the purchase of a tractor.  There are no documents detailing the terms of these loans.

On May 6, 2003, Plaintiff entered into a logging contract with Nola Daniels.  At the time of the contract, Nola Daniels was married to Guilford Town Judge David Daniels, although they were in the process of being divorced.

On or about June 14, 2004, Seidler and Hagan met with Judge Daniels to determine whether they could repossess the tractor and Jeep that were used as collateral on the loans made to Plaintiff.  Plaintiff alleges that Judge Daniels advised Hagan and Seidler that they could repossess the vehicles.

On June 15, 2004, Plaintiff was logging on Nola Daniels' property.  Defendant Jamie Bell, who was at all times hereto a New York State Trooper, received a report of a dispute over property.  Bell responded to scene of the dispute.  Shortly thereafter, Chenango County Deputy Sheriff Deborah Ives also arrived on the scene.

Seidler advised Bell that she owned the tractor and wanted to repossess it.  Seidler claimed that she recently purchased the tractor.  Bell advised the women that the dispute concerning the ownership of the vehicles was a civil matter and declined to arrest Plaintiff for theft.  Bell was then advised that Plaintiff and his logging crew were trespassing and that the property belonged to Judge Daniels.  Bell telephoned Judge Daniels who advised Bell that

the property belonged to his ex-wife and that she had repeatedly told Plaintiff not to conduct any logging on the property.  Daniels further informed Bell that his ex-wife would want Plaintiff arrested if he was logging on the property after being told not to do so.  Bell, therefore, arrested Plaintiff for violating N.Y. Penal Law § 140.05.  Plaintiff was taken to the State Police barracks.

Shortly thereafter, Nola Daniels appeared at the police station and confirmed that she had told Plaintiff not to go on her property.  Nevertheless, based on her statements to Bell that she may have left Plaintiff a message not to return to her property and not directly informed him not to return, Bell concluded that an arrest for trespass was not appropriate. Accordingly, Bell released Plaintiff and transported Plaintiff back to the logging road.  When Bell and Plaintiff returned to the logging road, they observed that the tractor had been removed.  Bell believed the matter to be a civil dispute and declined to intervene.

At approximately 7:00 p.m., Defendant Chenango County Deputy Sheriff C. Ted. Ellingsen received a call from dispatch advising that a Sheriff's Deputy was required to stand by for the retrieval of personal property.  Ellingsen responded to the location where he met Hagan.  Ellingsen asserts that Hagan presented to him the title to the Jeep and stated that she was the rightful owner.  Plaintiff disputes whether Hagan ever presented the title to Ellingsen.[1]  Ellingsen claims that he advised the parties that the matter was a civil dispute that needed to be resolved in court.  Plaintiff denies that Ellingsen ever spoke with Hagan or advised Hagan that the ownership issue was a civil matter.  Ellingsen claims that he never touched Plaintiff during the incident whereby Hagan took possession of the Jeep.  Plaintiff,

---

[1] Plaintiff's claim that Hagan did not present the title to Ellingsen is based on unsubstantiated hearsay.  That Hagan had the title is supported by Plaintiff's admission that he signed the title over to Hagan and placed the title in a file box in Hagan's home.

on the other hand, alleges that he objected to the license plates being removed and that Ellingsen "bear hugged" him and restrained Plaintiff from retrieving personal property from inside the Jeep.

On or about June 27, 2004, Hagan filed a criminal complaint with the Chenango County Sheriff's Department alleging that Plaintiff committed the crimes of Harassment in the Second Degree, Unlawful Imprisonment, and Criminal Trespass.  Ellingsen took the report from Hagan.  Deputy Sheriff Joshua Gould interviewed Hagan and assisted her in preparing a supporting deposition.  Hagan prepared and signed a violation Information accusing Plaintiff of harassment in the second degree.  Gould prepared misdemeanor informations charging Plaintiff with Unlawful Imprisonment in the Second Degree and Criminal Trespass in the Second Degree.  Based upon information supplied by Gould, Plymouth Town Justice Gladys Branagan issued a warrant for Plaintiff's arrest.  The City of Norwich Police Department executed the arrest warrant.  The charges against Plaintiff were dismissed for lack of a speedy trial.

## II.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedures governs motions for summary judgment.  It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56( c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment

- 4 -

bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in her favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  With this standard in mind, the Court will address Defendants' motions.

**III.    DISCUSSION**

    **a.    Defendant Bell**

        **1.        False Arrest**

Plaintiff claims that he was subject to an unlawful arrest by Defendant Bell.  Bell moves to dismiss the false arrest claim on the ground that he acted with probable cause or arguable probable cause.

"Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested."  United States v. Gagnon, 373 F.3d 230, 236 (2d Cir. 2004).  In determining whether the information Bell received from Judge Daniels was sufficient to

establish probable cause, the Court must consider the totality of the circumstances.  This includes consideration of the complainant's veracity, reliability, basis of knowledge, and the extent to which the complainant's statements are independently corroborated.  Id. at 235.

Here, Bell received information from Judge Daniels that the property belonged to his ex-wife, that she had repeatedly told Plaintiff not to conduct any logging on the property, and that his ex-wife would want Plaintiff arrested if he was conducting logging operations on the property after being instructed not to do so.[2]  Bell had no reason to believe that Judge Daniels was not being truthful.  Plaintiff has not identified any reason why Judge Daniels would have a motive to lie that was known to Bell.  To the contrary, it was reasonable for Bell to conclude that Judge Daniels was being truthful, that he was a reliable source of information and, having been Nola Daniels' husband, would have a basis of knowledge for his information.  Information that Plaintiff was logging on property after having been told to stay off the property is sufficient to justify a person of reasonable caution in believing that an offense (trespass) had been, or was being, committed.  The Court, therefore, finds that Bell acted with probable cause or, at the very least, arguable probable cause to arrest Plaintiff.

## 2.    Due Process

Plaintiff also contends that he was deprived of property (the tractor) because of Bell's actions.  The basis of this claim is that, once Plaintiff was returned to the logging road after being brought to the police station, the tractor was gone.

---

[2] The factual bases for this information is contained in Defendant Bell's Statement of Material Facts.  Bell Stmnt. of Mat. Facts at ¶ 20.  Plaintiff did not oppose the factual assertions contained in this paragraph, see Pl's Responsive Stmnt. of Mat Facts at ¶ 3, and, accordingly, they are deemed admitted.  N.D.N.Y.L.R. 7.1(a)(3).

An essential element of any claim brought under 42 U.S.C. § 1983 is state action. Here, there was none.  Bell was not involved in the removal of the tractor and did not otherwise engage in conduct that would rise to the level of state action.  To the contrary, Bell specifically declined to get involved in the matter, advising the parties that it was a civil dispute.  See Barrett v. Harwood, 189 F.3d 297 (2d Cir. 1999)

Plaintiff also asserts a substantive due process claim against Bell.  To succeed on a substantive due process claim, Plaintiff must demonstrate that the challenged action was arbitrary, conscience-shocking, or oppressive in a constitutional sense.  Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995).  "Principles of substantive due process apply only to a narrow band of extreme misbehavior by government agents acting under color of law: mistreatment of a person that is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  Arar v. Ashcroft, 532 F.3d 157, 204 (2d Cir. 2008) (quoting Lombardi v. Whitman, 485 F.3d 73, 79 (2d Cir. 2007)).  Here, the record contains insufficient evidence of egregious conduct giving rise to a substantive due process claim. Accordingly, that claim also is dismissed.

**b.    Chenango County**

Defendant Chenango County moves to dismiss the claims against it on the grounds that Plaintiff has failed to demonstrate that any constitutional violation was caused by an official custom, policy, or practice.  It is well-settled that a municipality may only be sued under 42 U.S.C. § 1983 for the constitutional violations of its employees occurring pursuant to an official policy or custom.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978).  Plaintiff has not pointed to any facts demonstrating that he sustained a constitutional injury as a result of an official custom, policy, or practice of, or by

the deliberate disregard of constitutional violations by, Chenango County.  The claims against the County are, therefore, dismissed.

### c.   C. Ted Ellingsen

Defendant Ellingsen moves to dismiss on the grounds that no fair-minded trier of fact could reasonably conclude that Plaintiff suffered a constitutional violation, that there is insufficient evidence of state action, and that he is entitled to qualified immunity.

### 1.   Substantive Due Process

As with the allegations against Bell, there are insufficient factual allegations of sufficiently egregious behavior to support a violation of Plaintiff's substantive due process rights.  Accordingly, those claims are dismissed.

### 2.   Repossession of the Jeep

Plaintiff also claims that Ellingsen assisted Hagan in taking Plaintiff's Jeep, thereby constituting a constitutional violation.  Ellingsen moves to dismiss this claim on the ground that there was no state action.

According to Plaintiff's deposition testimony, he was at a friend's residence when Hagan and Seidler arrived.  Ellingsen arrived at the scene close in time to Hagan and Seidler.  Hagan and Seidler proceeded to take the license plates off of the Jeep.  Ellingsen watched as Hagan and Seidler removed the license plates.  Plaintiff attempted to remove something from the Jeep at which time Ellingsen is alleged to have instructed Plaintiff not to remove anything from the Jeep and to have physically restrained Plaintiff.  Ellingsen then released Plaintiff.[3]  Hagan and Seidler got in the vehicle and drove it away.

---

[3] Ellingsen denies ever touching Plaintiff.

Plaintiff has "a constitutional right not to have property in which [he] enjoyed a lawful possessory interest [repossessed] by state action in violation of the constitution." Barrett, 189 F.3d at 301 (quoting Haverstick Enters., Inc. v. Financial Fed. Credit, Inc., 32 F.3d 989, 994 (6th Cir. 1994)).   "The Constitution requires notice and a prior hearing before a state can assist a secured creditor in the repossession of a debtor's property."   Barrett, 189 F.3d at 301.  To succeed on his claim, Plaintiff must "show that a person acting under color of any state statute, regulation, custom or usage deprived plaintiff of a right secured by the Constitution."   Id.

Defendant first contends that Plaintiff did not have a possessory interest in the Jeep because he signed the title to Hagan.  This claim must be rejected.  First, it is unclear whether Plaintiff ever transferred title to Hagan.  While Plaintiff may have signed the back of the title document, that, alone, is not necessarily sufficient to convey title of the vehicle. There is no evidence that Plaintiff ever delivered possession of the vehicle to Hagan, see N.Y. Veh. & Traf. Law § 2113, or that he intended to transfer anything other than a security interest.  Second, no formal title ownership is necessarily to invoke constitutional protection in property.  See Pangburn v. Culbertson, 200 F.3d 65, 69-70 (2d Cir. 1999) ("[C]ase law makes clear that no formal title ownership is necessary."); see also Fuentes v. Shevin, 407 U.S. 67, 86 (1972).  Based on the facts in the record, a fair-minded trier of fact could reasonably conclude that Plaintiff had a possessory interest (if not an ownership interest) in the Jeep.

Ellingsen next contends that he was not involved in the repossession and, therefore, there was no state action.  There is no clear point at which police action in connection with a repossession becomes "state action."  Barrett, 189 F.3d at 301.  The case

law establishes that mere police presence during a repossession is insufficient.  Id.  The

Barrett court found that "the crucial question is whether the police officer was (1) simply

present to stand by in case there was a breach of the peace, or (2) taking an active role that

either affirmatively assisted in the repossession over the debtor's objection or intentionally

intimidated the debtor so as to prevent him from exercising his legal right to object to the

repossession."  Id. at 302-03.

Here, Ellingsen was on the scene to prevent violence in the event of a breach of

the peace.  Ellingsen was called to the scene by Hagan, the repossessor.  Ellingsen arrived

at the same time as, or shortly after, Hagan.  This "could give 'the repossession a cachet of

legality' and have 'the effect of intimidating [the debtor] into not exercising his right to resist,

thus facilitating the repossession.'"  Marcus v. McCollum, 394 F.3d 813, 819 (10th Cir. 2004)

(quoting Booker v. City of Atlanta, 776 F.2d 272, 274 (11th Cir. 1985)).  Plaintiff alleges that

he objected to the removal of the license plates.  Plaintiff further alleges that when he

attempted to remove property from the Jeep, Ellingsen physically restrained him.  Pl.'s Dep.

at 67-68; Pl's Responsive Stmnt. of Mat. Facts at ¶ 11 ("[P]laintiff did not cause any breach

of the peace, or threaten such, at any time during the taking of the Jeep but merely

attempted to remove a document from the interior passenger side of the Jeep when . . .

Ellingsen grabbed the plaintiff from behind in a bear hug. . . .").  Ellingsen denies this.  This

presents a material issue of fact preventing summary judgment.  Looking at the evidence in

the light most favorable to the non-movant, the facts (if proven to be true) that Ellingsen

arrived on the scene at the same time as Hagan, restrained Plaintiff as he approached the

passenger side door of the Jeep, and that Plaintiff did not engage in conduct reasonably

believed to be in breach of the piece, may reasonably have caused Plaintiff to believe that

Ellingsen was preventing him from exercising his legal right to object to the repossession. See Harris v. City of Roseburg, 664 F.2d 1121 (9th Cir. 1981) ("[T]here may be a deprivation within the meaning of § 1983 . . . when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession. . . . While mere acquiescence by the police to 'stand by in case of trouble' is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action."); see also Barrett, 189 F.3d at 303 ("[A]n officer might . . . be liable if the evidence showed . . . that the officer came on the scene at the request of the repossessor and said to the debtor, 'don't interfere with this repossession' . . . ."). It is for a jury to determine whether Ellingson assisted in the repossession or so intimidated Plaintiff as to cause him to refrain from exercising his right to resist the repossession. Accordingly, Ellingson's motion for summary judgment is denied.

Ellingson's claim of qualified immunity also must be denied. At all times relevant hereto, it was clearly established that a deprivation of property is actionable under 42 U.S.C. § 1983. It also was clearly established that an unlawful repossession can amount to state action actionable under § 1983. Barrett, 189 F.3d at 302. There is a question of fact concerning the extent of Ellingson's involvement in the repossession of the Jeep and, thus, whether he is entitled to qualified immunity. See Marcus, 394 F.3d at 824.

### 3.        Criminal Prosecution

Plaintiff also alleges a constitutional violation arising out of the charges filed against him for harassment, unlawful imprisonment, and trespass. The undisputed evidence in the record is that Ellingsen did not file any charges against Plaintiff. Ellingsen similarly was not

involved in Plaintiff's arrest.  Accordingly, any claims against Ellingsen arising out of his

arrest and prosecution are dismissed.

### 4.     Res Judicata

Lastly, Ellingson moves to dismiss the claims against him on grounds of *res

judicata*.  Plaintiff commenced an action against Ellingson in state court sounding in

malicious prosecution.  That claim was dismissed.  There being no viable malicious

prosecution claim in this case, the dismissal of the state case is irrelevant to the sole claim

that remains pending before this Court.

## IV.     CONCLUSION

For the foregoing reasons: (1) Defendant Bell's motion for summary judgment is

GRANTED IN ITS ENTIRETY and the Amended Complaint is DISMISSED as to him; (2)

Defendant County of Chenango's motion for summary judgment is GRANTED IN ITS

ENTIRETY and the Amended Complaint is DISMISSED as to it; and (3) Defendant

Ellingson's motion for summary judgment is GRANTED as to all claims EXCEPT for

Plaintiff's claim concerning the unlawful deprivation of Plaintiff's property.

The parties are hereby directed to appear at the United States Courthouse in

Binghamton, New York on Friday, February 13, 2009 at 10:30 a.m. for a pre-trial conference.

Persons with full settlement authority shall be present at the pre-trial conference.  All pre-trial

papers must be submitted on or before February 11, 2009.

IT IS SO ORDERED.

Dated:February 4, 2009

Thomas J. McAvoy

Senior, U.S. District Judge